In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3254

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROD BLAGOJEVICH,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 CR 888 — **James B. Zagel**, *Judge.*

ARGUED APRIL 18, 2017 — DECIDED APRIL 21, 2017

Before EASTERBROOK, KANNE, and ROVNER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Rod Blagojevich was convicted of 18 crimes committed while he was Governor of Illinois. The district court sentenced him to 168 months' imprisonment. Our initial opinion vacated five of the convictions but affirmed the others and remanded for a potential retrial on the five vacated charges and for resentencing. 794 F.3d 729 (7th Cir. 2015). Blagojevich asked the Supreme Court to review that decision, and while the petition for cer-

tiorari was pending the district court put proceedings in abeyance. After the Supreme Court denied the petition, 136 S. Ct. 1491 (2016), rehearing denied, 136 S. Ct. 2386 (2016), the prosecutor announced that the five vacated charges would not be retried, and the district judge resentenced Blagojevich on the remaining 13 convictions.

The sentence was again 168 months. As before, the judge determined that the Sentencing Guidelines recommend a term within the range of 360 months to life, then made some reductions that produced a final range of 151 to 188 months. (Our first opinion rejected a challenge to that range. See 794 F.3d at 743.) The judge recognized that 168 months is a stiff sentence for non-violent crimes by someone with no criminal record and unlikely to commit the same kinds of crimes again, because his impeachment and removal from office by the state legislature makes him ineligible for election to a new state office. Ill. Const. Art. IV §14. But the judge concluded that the sentence is justified by the gravity of Blagojevich's offenses and the need to deter other public officials from acting as Blagojevich did.

Our first opinion stated: "It is not possible to call 168 months unlawfully high for Blagojevich's crimes, but the district judge should consider on remand whether it is the most appropriate sentence." 794 F.3d at 743. The judge did consider that issue in the new sentencing and stuck by his conclusion. Despite what we said in 2015, in this successive appeal Blagojevich contends that the sentence *is* unlawfully high. He makes three contentions: first that the judge should not have rejected evidence of what Blagojevich calls his "extraordinary" rehabilitation while in prison; second that the judge should have revised the sentence in light of the dis-

missal of the five vacated counts; third that the judge failed to address an argument about sentencing disparities. We consider these in turn.

*Pepper v. United States*, 562 U.S. 476, 481 (2011), holds that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range." Blagojevich's original sentence was imposed in December 2011, and he entered prison in March 2012. He submitted evidence that between then and the new sentencing in August 2016 he had helped other inmates with their educations and set an example of moral and caring behavior.

The district judge acknowledged this evidence but found that it did not justify a lower sentence, in large part because none of the other inmates had known Blagojevich while he held office and therefore could not show that he had fundamentally changed his attitude toward corrupt dealing. The judge demonstrated that he understood the extent of discretion under *Pepper* and did not need to explain at greater length why he found the new evidence unpersuasive. See *Rita v. United States*, 551 U.S. 338, 356–59 (2007) (brief reasons suffice). Blagojevich's treatment of fellow inmates may show that outside of office he is an admirable person, but the court was entitled to impose punishment that reflects how Blagojevich behaved when he had a different menu of opportunities and to deter those who hold office today. The authority recognized by *Pepper* belongs to the district judge. As with many discretionary subjects the fact that a judge *could* have

ruled otherwise does not imply that the judge was *compelled* to rule otherwise.

Blagojevich's contention that the vacatur of five convictions calls for a lower sentence likewise was considered by the district judge, who observed that the remaining counts of conviction represent the same kind of conduct as the vacated counts. We did not hold that Blagojevich was innocent of the charges in the vacated counts; we concluded, rather, that the jury instructions did not separate political horse trading (Blagojevich's offer to appoint someone to the Senate in exchange for the President's promise to appoint him to the Cabinet) from extortion and similar crimes (Blagojevich's offer to appoint someone to the Senate in exchange for cash). 794 F.3d at 734. The district judge, who presided over two lengthy trials, was free to consider all of the evidence even though the prosecutor elected not to retry these five counts. The district judge also observed that the vacatur did not affect the Guidelines range. Given the standards of *Rita*, the judge said enough to justify the sentence.

The third argument about sentencing is that the district judge did not address Blagojevich's contention, based on 18 U.S.C. §3553(a)(6), that a 168-month sentence would produce an unwarranted disparity compared with the sentences meted out to other persons convicted of corruption in political office. The problem with this argument is that the Sentencing Guidelines are themselves an anti-disparity formula, and the Supreme Court stated in *Gall v. United States*, 552 U.S. 38 (2007), that to base a sentence on a properly determined Guidelines range is to give adequate consideration to the relation between the defendant's sentence and those of other persons:

> Section 3553(a)(6) requires judges to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The Court of Appeals stated that "the record does not show that the district court considered whether a sentence of probation would result in unwarranted disparities." 446 F.3d at 890. As with the seriousness of the offense conduct, avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he *necessarily* gave significant weight and consideration to the need to avoid unwarranted disparities.

552 U.S. at 54 (emphasis added). See also, e.g., *United States v. Bartlett*, 567 F.3d 901, 907–09 (7th Cir. 2009); *United States v. Boscarino*, 437 F.3d 634, 638–39 (7th Cir. 2006). District judges have discretion to sentence outside a Guidelines range, but as we observed in *Bartlett* such a step comes at the expense of increased disparities; it is never compelled by §3553(a)(6) in order to avoid unwarranted disparities. 567 F.3d at 908–09. The district judge gave a sentence within the revised Guidelines range he constructed—a range that Blagojevich does not now contend is too high—and therefore did not need to discuss §3553(a)(6) separately.

In addition to contesting the sentence imposed on remand, Blagojevich contends that our 2015 opinion erred to the extent it affirmed any of his convictions. We do not see a need to elaborate on or depart from what that decision said about the merits. We offer only a few words about *McDonnell v. United States*, 136 S. Ct. 2355 (2016), which postdates our opinion.

According to Blagojevich, *McDonnell* calls the reasoning of our first decision into question. Not so. The only issue before the Court was whether McDonnell had traded "official

acts" for money and other benefits. The Justices considered the definition of "official act" in 18 U.S.C. §201(a)(3) and concluded that McDonnell's jury had been instructed incorrectly. Blagojevich, by contrast, has never contended that the activities of appointing someone to a vacant seat in the Senate, signing legislation, or the other activities that a jury found he sought to profit from, were not "official acts" of a state's governor.

Blagojevich's remaining arguments do not require discussion.

AFFIRMED