In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 23-3370 & 23-3378

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CARLOS ESTRADA,

*Defendant-Appellant.*

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
Nos. 1:23-cr-00034-JMS-MG-1 & 1:22-cr-00128-JMS-MJD-1 —
**Jane Magnus-Stinson**, *Judge.*

SUBMITTED JANUARY 22, 2025* — DECIDED APRIL 25, 2025

Before ROVNER, BRENNAN, and ST. EVE, *Circuit Judges.*

ROVNER, *Circuit Judge.* Defendant-Appellant Carlos Es-
trada pleaded guilty to one count of possessing with intent to
distribute at least 100 grams of heroin, in violation of 21 U.S.C.

---

* We vacated the oral argument scheduled in this case for January 22,
2025, on Estrada's motion, and the case was submitted on the briefs and
the record.

§ 841(a)(1). The district court ultimately ordered Estrada to serve a prison term of 87 months, which was at the low end of the advisory Sentencing Guidelines range as the court had calculated that range. Estrada appeals, contending that the district court's decision not to vary downward with respect to his criminal history category was tainted by two procedural errors. Finding that no such error occurred, we affirm the sentence.

## I.

On or about February 2, 2023, Estrada, an Indiana resident, was arrested after he arranged for the sale of some 2,579 grams of heroin to an undercover officer in New Jersey. The man who delivered the heroin said that he had picked it up at Estrada's house in Indianapolis. On the same day, police officers executed a search warrant on Estrada's Indianapolis residence and discovered a bag containing another 371 grams of heroin that Estrada intended to distribute, along with a digital scale and a box containing six pounds of lactose, a cutting agent commonly used with heroin. Estrada committed the February 2023 heroin offense six months after he was released from prison and began his term of supervised release on a 2019 conviction in the Southern District of New York for engaging in a heroin-distribution conspiracy involving more than three kilograms of heroin. The court in the New York case had ordered Estrada to serve a term of 60 months, 37 months below the low end of the Guidelines range, recognizing that Estrada had matured from a challenging upbringing, was hard working, owned his own business, was devoted to his family, and had four young children, including a son with autism. *See United States v. Carlos Estrada*, No. 1:19-cr-00440-LAK, Sentencing Tr. (R. 23) (S.D.N.Y. Oct. 17, 2019).

Estrada ultimately agreed to plead guilty in this case without a written plea agreement, and in November 2023, following the preparation of a pre-sentence investigation report (the "PSR"), the district court conducted a change-of-plea and sentencing hearing.

Estrada was assigned a total of four criminal history points, which placed him into a criminal history category of III. Three of those points were based on his 2019 heroin conviction. The final point arose from a misdemeanor conviction in 2018 for possessing a small amount of marijuana for personal use; and it was that additional point which elevated Estrada's criminal history category from II to III. Coupled with Estrada's adjusted offense level of 27, his criminal history category produced an advisory sentencing range of 87 to 108 months in prison. Without the additional criminal history point and with a criminal history category of II, Estrada's advisory sentencing range would have been 78–97 months.

After the district court accepted Estrada's guilty plea and turned to sentencing, his counsel urged the court to vary downward from the sentencing range. Section 4A1.3 of the Guidelines (Departures Based on Inadequacy of Criminal History Category) sets forth criteria for departing from the Guidelines sentencing range, and among those criteria is the following standard for departing downward from a defendant's criminal history category:

> If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit another crime, a downward departure may be warranted.

U.S.S.G. § 4A1.3(b)(1). Of course, since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), rendered the Guidelines advisory, the concept of a departure has been rendered obsolete. *United States v. Brown*, 732 F.3d 781, 783, 786 (7th Cir. 2013). Nonetheless, a sentencing court "can still take guidance from the departure provisions in the guidelines and apply them by way of analogy when assessing the § 3553(a) [sentencing] factors." *Id.* at 786 (cleaned up).

Effective with the November 1, 2023 Guidelines pursuant to which Estrada was sentenced, the commentary to section 4A1.3 was amended to provide the following new example illustrating when a downward departure might be warranted:

> A downward departure from the defendant's criminal history category may be warranted [if] … [t]he defendant received criminal history points from a sentence for possession of marihuana for personal use, without an intent to sell or distribute it to another person.

U.S.S.G. § 4A1.3, cmt. 3(A)(ii); Guidelines Amendment 821.

Citing this new commentary, Estrada noted that his 2018 marijuana conviction was based solely on his personal use of marijuana, and he asked the district court to vary downward from a Criminal History category of III to II and sentence him based on the lower advisory sentencing range corresponding to a category II criminal history. Neither the probation officer nor the government believed that a departure was warranted in Estrada's case.

The district judge rejected Estrada's request for a downward departure or variance:

All right. So going back to the language of 4A point —sorry, 4A1.3(b)(1) —it states that if reliable information indicates that the category substantially over represents the seriousness of the Defendant's criminal history or the likelihood that the Defendant will commit other crimes [… .] [T]he Court finds that neither of those circumstances are present here based on the criminal conduct that's outlined in the presentence investigation report, so the Court declines to take a level, a depart[ure], given several factors. One is the nature and circumstances of some of the Defendant's prior convictions, specifically that in Paragraph 39 [discussing the New York offense], and this will all just be discussed later, but [as to]the likelihood that the Defendant will commit other crimes, I can't find that that's reduced given that the Defendant was on supervised release or that it's overstated because the Defendant allegedly committed this crime while on supervised release, which we'll get to in a moment. So the Court denies the defense request to depart by an additional level.

R. 53 at 28–29. As noted, the judge went on to sentence Estrada to the low end of the Guidelines range, which was 87 months in prison. Estrada appeals his sentence.[1]

---

[1] Separately, the district court revoked Estrada's supervised release on the New York conviction (which had been transferred to the Southern District of Indiana) based on his commission of the instant offense and his possession and use of marijuana; the court ordered him to serve a

(continued)

## II.

We typically review a district court's sentencing decision, whether inside or outside of the range advised by the Sentencing Guidelines, for substantive reasonableness, under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 46, 49 (2007); *United States v. Williams*, 85 F.4th 844, 847 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 1046 (2024). In this appeal, however, Estrada argues that the district court committed two procedural errors in denying his request for a downward variance from his assigned criminal history category. Such errors are reviewed de novo. *E.g.*, *United States v. Wilcher*, 91 F.4th 864, 869 (7th Cir. 2024). Estrada contends first that the court did not adequately explain its reasons for denying his variance request—in particular, its reasons for concluding that his category III criminal history did not substantially over-represent the seriousness of his criminal history. *See, e.g.*, *United States v. Lockwood*, 789 F.3d 773, 781 (7th Cir. 2015) ("A sentencing court commits procedural error by not adequately explaining its choice of sentence.") (quoting *United States v. Lyons*, 733 F.3d 777, 784 (7th Cir. 2013)). Second, Estrada argues that the district court misapprehended its authority to depart on the ground that his criminal history category substantially over-represented the likelihood that he will commit additional crimes. *See Gall*, 552 U.S. at 51 (sentencing decision

_____

consecutive term of 15 months in prison (the low end of the recommended range) for having violated the terms of his release. The court did not extend the length of his supervised release in that case. The revocation proceeding is not at issue in this appeal.

mistakenly treating Guidelines as mandatory rather than advisory constitutes procedural error).

As noted above, section 4A1.3(b)(1) identifies two alternative criteria for finding that a downward departure to a lower criminal history category may be warranted: (1) the defendant's criminal history category substantially over-represents the seriousness of his criminal history, or (2) the criminal history category substantially over-represents the likelihood that the defendant will commit another crime. The district court, of course, cited both criteria and found that neither was met in this case.

Estrada argues first and principally that the district court did not adequately explain why it believed that a criminal history category of III did not over-represent the gravity of his criminal history. The court referenced "the nature and circumstances of some of the Defendant's prior convictions, specifically that in Paragraph 39 [of the PSR, discussing the New York offense] … ." R. 53 at 29. The court later elaborated that Estrada's decision to commit a second heroin offense despite having received a reduced sentence for the New York offense reflected a lack of respect for both the "mercy" the judge had shown in that case and for the law. R. 53 at 38; *see also* R. 53 at 39 (noting that the mitigating circumstances of Estrada's difficult upbringing and quick guilty plea were "outweighed by the fact of [Estrada] committing this crime within such a short period of time following [his] release and after having relied on [his] children as a basis to seek mercy"). Estrada argues that this was inadequate, in that the court "never explain[ed] the specific conduct it relied upon nor how that specific conduct shows that Mr. Estrada still deserved to be in criminal

history category III excluding the marijuana-possession charge." Estrada Br. 6.

In view of the criminal history set forth in the PSR, however, the district court's explanation was adequate. The court in this case decided to follow rather than vary from the Guidelines, and that decision is one that "will not necessarily require lengthy explanation." *Rita v. United States*, 551 U.S. 338, 356 (2007); *see also id.* at 356 (sentencing judge must say enough to satisfy appellate court she has considered the parties' arguments and has a reasoned basis for exercising her decision-making authority); *United States v. Fogle*, 825 F.3d 354, 358 (7th Cir. 2016) (district court's sentencing explanation need not be exhaustive but must be adequate to allow for meaningful appellate review and promote perception of fair sentencing). The relevant question posed by the departure guideline was whether Estrada's criminal history category as calculated substantially over-represented the seriousness of his criminal history. The court specifically addressed only Estrada's 2019 conviction but given the rather extensive list of other prior offenses set forth in the PSR, it is readily apparent why the court concluded that a category III did not substantially over-represent the gravity of his criminal history.

Estrada's history includes convictions for a total of eleven felony offenses. True, most were juvenile convictions (Estrada was 32 years old at the time of sentencing in this case), but a number of them were for quite serious crimes, ranging from burglary to trafficking of a person and compelling another person to engage in prostitution to sexual assault. Then, at age 19, Estrada was convicted of marijuana possession based on his presence at a residence where 200 bricks of marijuana were discovered along with multiple handguns. Nine years

later, he was conspiring to distribute heroin, which resulted in his 2019 conviction in New York. For that conviction, as the district court here emphasized, he convinced the sentencing judge to show mercy in view of his personal and family circumstances and he was sentenced to a substantially below-Guidelines prison term. Six months after he was released from prison, he was dealing in heroin again. For all but the 2019 conviction, Estrada was assigned no criminal history points for his prior felonies due to the age of the convictions. The 2018 marijuana offense, for which Estrada received one point, was the only other conviction that was recognized in the criminal history calculation. That conviction itself was one of several misdemeanor convictions recounted in the PSR, but it was the sole such conviction that was considered in the criminal history calculation. Finally, owing to a second amendment taking effect with the November 2023 Guidelines, Estrada was not assigned two additional criminal history points for having committed the instant offense while on supervised release from the 2019 New York conviction, as he would have been had he been sentenced under the November 2021 Guidelines. *Compare* U.S.S.G. § 4A1.1(d) (Nov. 2021) (specifying a two-point increase), *with* U.S.S.G. § 4A1.1(e) (specifying a one-point increase, but only if defendant has received seven or more criminal history points under subsections (a) through (d)). In that respect alone, one might say that a criminal history category of III did not over-represent the gravity of Estrada's criminal history, as his criminal history points omitted recognition that he recidivated while on supervised release from the New York conviction.

In short, although the court confined its remarks to the 2019 New York conviction, when it alluded to "the nature and circumstances of some of the Defendant's prior convictions,"

it is clear enough to what the court was referring. Estrada had a substantial and serious criminal record, the bulk of which was not recognized in the criminal history calculation. Although Estrada might wish that the court had elaborated on its interpretation of his criminal history, we cannot say under the circumstances that the court was required to say more to make the rather obvious point that Estrada's criminal history category did not substantially over-represent the seriousness of his prior criminal record. The court committed no procedural error in this regard.

That leaves the separate question whether a criminal history category of III substantially over-represents the likelihood that Estrada would commit another offense. The district court answered this question too in the negative, and it is hard to quarrel with that conclusion. Given Estrada's relatively lengthy history of criminal offenses, and the fact that he committed the instant offense while on supervised release from his prior conviction in New York, there frankly is every reason to think that Estrada might re-offend once he completes his prison term on the current offense.

But as with the first question, Estrada posits that a procedural error occurred. He argues that when the district court remarked, "I can't find that [the likelihood of re-offending is] reduced given that the Defendant was on supervised release" from the New York conviction when he committed the instant offense, the court was signaling that it lacked the authority to vary downward based on the likelihood of recidivism when, in fact, there was nothing about the Guideline or the instant offense that tied the court's hands in this respect. *See Gall*, 552 U.S. at 51.

However, we understand the court to have said that it would not vary downward on these facts, not that it was precluded from doing so. The government certainly never argued that the court lacked the authority to vary downward; to the contrary, counsel for both parties presented the matter of a variance as one committed to the district court's discretion. R. 53 at 25, 28. Apart from its use of the word "can't," which is often used colloquially as shorthand to mean "will not, under the circumstances," the court itself said nothing which might support the conclusion that it mistakenly believed its hands were tied. In fact, the court otherwise remarked that it had "declin[ed] to take a level" from Estrada's criminal history, R. 53 at 29, which is consistent with the exercise of discretion. There was no procedural error as to this aspect of the court's decision to deny a downward variance.

### III.

The district court committed no procedural error in declining to grant Estrada a downward variance with respect to his criminal history category. We therefore AFFIRM Estrada's sentence.